Van Voorhis, J.
Adley Express Company, Inc., appellant-respondent (hereinafter called Adley), is engaged in the trucking business in New Haven, Connecticut. It had about 600 employees at the times involved in this dispute. As recited in a document described as the Plan, Adley “ pursuant to action of its Board of Directors, at a special meeting held on November 1, 1943, has adopted as of the 31st day of December, 1943, the following Employe Profit Sharing and Retirement Plan for the *432 exclusive benefit of those of its employees eligible as hereinafter provided.” The Plan was implemented by a trust agreement (under which respondent-appellant Corn Exchange Bank Trust Company is trustee) which provided that the trustee should receive and disburse for the benefit of the employees such funds as were paid to it by Adley pursuant to the Plan.
Section 2.1 of the Plan states that “ The Company proposes to make contributions to the Trust Fund from its profits in those years in which the earnings of the Company in the opinion of its Board of Directors would justify such action.” (Emphasis supplied.) On November 2, 1944, the Plan was amended so as to specify the exact amount of profits of Adley to be appropriated to the Plan. Such payments under the amendment were, as had been originally provided, to be made “ out of the net profits of the Company ”, but the extent to which the profits were to be shared with the employees was thereafter to be measured by paying into the trust fund, out of the annual net profits in excess of the dividends due on preferred stock and $6 a share on the common stock, an amount representing 25% of the first $100,000 and 50% on the balance.
On December 31, 1943, the comptroller of Adley directed the trustee to apply to the trust account under said trust agreement 800 shares of common stock of Wickwire Spencer Steel Company, held by it for the account of Adley, and notified the trustee that a depositary of Adley’s in Boston, Massachusetts, had been instructed to forward 515 shares of Keystone Custodian Funds stock to the trustee for the same account. Delivery of the latter stock to the trustee was effected February 14, 1944. These Wickwire and Keystone shares, plus a Wickwire stock dividend and $28 in cash, constitute the entire assets which, under any theory, could belong to said trust. They have been inventoried by the trustee at $19,783.70 as of date of receipt.
When Adley’s annual statements were afterwards prepared, it developed that Adley made no profit in the years 1943 or 1944. There was likewise no profit for 1945. On November 9, 1945, Adley notified the trustee of its intention to terminate the Plan and Trust, pursuant to appropriate clauses contained therein. The existence of the Plan was never announced to Adley’s employees.
The trustee refused to deliver these assets to Adley upon the ground that, although the termination clauses in the Plan and Trust relieved Adley from any obligation to make contributions in the future, distribution to Adley’s employees was required to *433 be made of assets in the trust at the time of giving notice of termination.
Adley replied by insisting that the Plan never contemplated that any moneys should be distributed to employees except out of profits of the corporation, and that the assets in dispute were delivered to the trustee under a mutual mistake of fact that Adley would operate at a profit for the year 1943, or subject to the condition that there would be such a profit.
This proceeding was instituted under article 79 of the Civil Practice Act by the trustee for an accounting, and for permission to resign and for the appointment of a successor trustee. Adley answered the petition by demanding restoration to it of the assets in this trust upon the theory that there never were any assets subject to distribution to employees under the terms of the Plan and Trust, and that the trust has ended for the future.
No questions were raised concerning the correctness of the account, but questions were referred to the Honorable Peter Schmuck as Official Referee on which to hear and report, to-wit: (1) what expenses are properly allowable to the trustees, (2) whether the trustee may retain a reserve for taxes, and (3) the issues raised by Adley’s counterclaim for the recovery of said assets held by the trustee. The Official Referee reported that the amounts sought for expenses by the trustee were excessive, and that there was no justifiable reason for the trustee to maintain a reserve for taxes. Concerning Adley’s counterclaim to recover these assets, the Referee found that the Plan and Trust did not establish a pension plan but rather a profit-sharing plan; that Adley was not required to make any contribution in any year unless it earned a net profit; that no contribution by Adley was to be deemed to have been made to the trust fund until the board of directors so ordered, after formally and factually finding that the net profits justified it; that when the appropriation to the trust of these assets was directed by Adley’s comptroller on December 31, 1943, a third-quarter statement indicated abundant profits, yet when the year ended no profit existed warranting a contribution. The report of the Official Referee continues:
11 As the matter unfolded it seems beyond cavil that the deposit of securities had been tentative only; when made it was physically impossible for anyone to determine the-year’s net profit. # # #
“ As my concluding inference from the revelation of the hearings I report that the deposits were made under a mistake of fact, that they were made dependent upon the settlor having a *434 net profit for the calendar year 1943; that after technical amendments insisted upon by the Commissioner of Internal Revenue were made at a regularly called Directors’ meeting at which all directors were present, a resolution was adopted abandoning this employees’ profit-sharing and retirement plan because no profits were earned since the proposal of the plan and that the trustee was so notified and requested to return the deposit, which request was refused.”
Special Term approved the trustee’s account except for a disbursement of $1,333.55 made by the trustee for the cost of service of the order to show cause by publication upon Adley’s employees, awarded the trustee $914.19 for compensation, $2,000 to its attorney, and $1,000 to the guardian ad litem, denied the trustee’s application to withhold a reserve for taxes, but dismissed Adley’s counterclaim for restoration to it of the assets alleged to have become subject to distribution to Adley’s employees under the Plan and Trust.
The trustee, Corn Exchange Bank Trust Company, has appealed from the surcharge against it of $1,333.55 to cover the cost of service by publication upon Adley’s employees of the order to show cause by which this proceeding was instituted. Such service was reasonable, and the order appealed from should be modified, on the appeal by the trustee, by eliminating this surcharge and directing that the trustee be credited with this disbursement.
The order under review should further be modified, on the appeal by Adley, so as to grant its counterclaim to recover the assets held by the trustee, after making the disbursements allowed. The facts as found by the Official Referee with respect to the Plan and Trust are warranted by the evidence, and lead to the conclusion that these assets never did belong to the trust and should be restored to Adley. Such relief on the counterclaim is not dependent upon the termination clauses contained in the Trust, nor upon the so-called recapture clause which was designed to operate in event that the Commissioner of Internal Revenue should determine that contributions made are not valid payments under section 23, subdivision (p), paragraph [1], subparagraph (E) of the Internal Revenue Code. The modification of the Plan in 1944, by deleting this recapture clause did not constitute ratification or final approval by Adley of the transfer of assets which were not profits, and consequently were not intended by the Plan for distribution to Adley’s employees.
*435 The order appealed from should be modified by approving the disbursement by the trustee of $1,333.55 for service by publication of the order to show cause as above indicated, and by granting the relief demanded in Adley’s counterclaim for delivery to it of the balance of the trust fund remaining after disbursements allowed, by eliminating the provision that Corn Exchange Bank Trust Company or any successor shall continue to serve as trustee, and by treating this as a final accounting, and as so modified the said order should be affirmed, with costs of the appeal to Adley and to Corn Exchange Bank Trust Company payable out of the said fund. Findings of fact should be made in accordance with this opinion, and contrary findings should be reversed.
Dobe, J. P., Cohn, Callahan, and Shientag, JJ., concur.
Order unanimously modified by approving the disbursement by the trustee of $1,333.55 for service by publication of the order to show cause as above indicated, and by granting the relief demanded in Adley’s counterclaim for delivery to it of the balance of the trust fund remaining after disbursements allowed, by eliminating the provision that Corn Exchange Bank Trust Company or any successor shall continue to serve as trustee, and by treating this as a final accounting, and as so modified affirmed, with costs of the appeal to Adley and to Corn Exchange Bank Trust Company payable out of the said fund., Findings of fact should be made in accordance with this opinion, and contrary findings should be reversed. Settle order on notice.